AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One blue iPhone cellphone stored in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona 85122. | Case No.  24-6334MB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before   October 11, 2024    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  September 27, 2024@2:12pm   _____
*Judge's signature*

City and state: <u>Phoenix, Arizona</u>          <u>Honorable Alison S. Bachus, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Blue Apple Iphone seized from Ashley MOORE. (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### *Property to be seized*

1.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, that relate to violations of Title 8, United States Code Sections 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens) and 1324(a)(1)(A)(v)(I) (Conspiracy to Bring in, Transport and Harbor Illegal Aliens), including:

a.      All information related to the pickup, transportation of inadmissible aliens in the United States (including names, addresses, telephone numbers, location, or any other identifying information);

b.      All information related to any smuggling coordinators (including names, addresses, telephone numbers, location, or any other identifying information);

c.      All bank records, checks, credit card bills, account information, or other financial records;

d.      All information regarding the receipt, transfer, possession, transportation, or use of alien smuggling proceeds;

e.      Any information recording schedule or travel;

f.      Evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

g.      Contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone

calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One blue iPhone cellphone stored in the evidence room of the<br>Casa Grande Border Patrol Station, located at 396 N. Camino<br>Mercado, Casa Grande, Arizona 85122 | Case No.    24-6334MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. §1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |
| 8 U.S.C. §1324(a)(1)(A)(v)(I) | Conspiracy to Bring in, Transport, and Harbor Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Agent Daniel Brague**

☒ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Arellano Edwards

ROSS ARELLANO EDWARDS
Digitally signed by ROSS ARELLANO EDWARDS
Date: 2024.09.27 09:57:00 -07'00'

Sworn to telephonically And signed electronically.

Date: ___September 27, 2024@2:10pm___

City and state: Phoenix, Arizona

DANIEL C BRAGUE
Digitally signed by DANIEL C BRAGUE
Date: 2024.09.27 13:30:22 -07'00'

*Applicant's Signature*

Daniel Brague, Border Patrol Agent
*Printed name and title*

*Judge's signature*

Honorable Alison S. Bachus
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Blue Apple Iphone seized from Ashley MOORE. (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, that relate to violations of Title 8, United States Code Sections 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens) and 1324(a)(1)(A)(v)(I) (Conspiracy to Bring in, Transport and Harbor Illegal Aliens), including:

        a.      All information related to the pickup, transportation of inadmissible aliens in the United States (including names, addresses, telephone numbers, location, or any other identifying information);

        b.      All information related to any smuggling coordinators (including names, addresses, telephone numbers, location, or any other identifying information);

        c.      All bank records, checks, credit card bills, account information, or other financial records;

        d.      All information regarding the receipt, transfer, possession, transportation, or use of alien smuggling proceeds;

        e.      Any information recording schedule or travel;

        f.      Evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

        g.      Contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

        As used above, the terms "records" and "information" includes records of telephone

calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Your Affiant, Daniel Brague, being first duly sworn, hereby deposes and states as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.     Your Affiant is a Border Patrol Agent (BPA) with the United States Border Patrol (USBP) assigned to the Casa Grande Intelligence Collection Team (ICT) in Casa Grande, Arizona. I have been an agent with the USBP since September 2011. I completed the USBP Academy, where I received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. I have also received instruction in the detection, interdiction and arrest of narcotics smugglers, alien smugglers and individuals illegally present in the United States. As a BPA, I have received instruction in interviewing and interrogation.

3.     I have been assigned investigative duties with the Casa Grande ICT since March 2024. I routinely investigate violations of Title 21, Title 19, Title 18, and Title 8 of the United States Code, as well as various other federal law violations. I prepare investigative reports regarding criminal misconduct, intelligence and allegations of wrongdoing and their outcomes. I provide supporting documentation of investigations conducted, to include both testimonial and physical evidence. Assigned liaisons with Federal, state, local and foreign law enforcement and civilian agencies have become an integral part of my daily operations.

4. I routinely conduct surveillance and counter surveillance to protect operational integrity and security, as well as investigate violations of federal law. I access multiple databases and intelligence-based systems and through my investigations, have assisted in interagency investigations. I have assisted in the drafting, submission, and execution of probable cause warrants for arrests, conveyances, and dwellings.

5. The statements contained in this Affidavit are based on information derived from my personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits.

6. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all the relevant facts known to law enforcement officers.

## II.    BASIS FOR PROBABLE CAUSE

7. On September 18, 2024, Pinal County Sheriff's Office Deputy A. Canzona #2604 stopped a gray Kia Optima for driving with a clear covering over the car's license plate, a violation of the Arizona Revised Statutes. She observed five individuals in the car—one United States Citizen (USC) driver, one USC passenger, and three passengers in the back seat. The driver of the vehicle was later identified as Jonathan JEWEL. JEWEL stated that the female passenger was his girlfriend and identified her as Ashley MOORE. JEWEL could not provide names for his three passengers and stated that he had picked up his three passengers off the Naco Freeway down by the border. At this time JEWEL advised Deputy A. Canzona that he was on federal probation for Human Smuggling. JEWEL admitted to Deputy A. Canzona that he was getting paid $1,000 dollars per person for a total of $3,000 dollars. JEWEL also stated that MOORE was aware of what they were doing, and they were going to pay rent with the money.

8. Due to the information provided by JEWEL at the stop, Deputy A. Canzona

came to believe that she had encountered a human smuggling event and contacted Border Patrol for further assistance.  Border Patrol Agent (BPA) Righteous-True Garcia responded to the call and performed and immigration inspection. All subjects were later identified as VELAZQUEZ BARRIOS, Alonzo (DOB: 05/22/1975, COB: Mexico),  BURGOS PERALTA, Jesus (DOB: 02/27/2001, COB: Mexico) and RAMOS GINES, Salvador (DOB: 07/27/1995, COB: Mexico) freely admitted to being citizens of Mexico and entering the United States illegally without documents. BPAs arrested JEWEL and MOORE and detained the three passengers.  MOORE had on her persons at the time of arrest the SUBJECTS CELLULAR TELEPHONE and confirmed during the property inventory that the SUBJECTS CELLULAR TELEPHONE belonged to her.

9.      On September 18, 2024, at approximately 11:52 a.m., JEWELL was advised of his *Miranda* rights, and stated he did want to speak with Border Patrol Agents without a lawyer present and corroborated his statement to Deputy A. Canzona. During his interview JEWELL stated that MOORE had asked him for help since she had picked up people (non-citizens) but had an issue because the checkpoint was open. MOORE came and picked up JEWELL from her trailer, and they returned down south to pick up the three individuals. They ended up taking State Route 80 to circumvent the Border Patrol checkpoints. JEWELL stated that both were talking to their coordinator through WhatsApp. JEWELL stated that he had deleted his WhatsApp but was unsure if MOORE deleted her WhatsApp. MOORE was using SUBJECTS CELLULAR TELEPHONE to directly communicate with her coordinator.

10.     On September 18, 2024, at approximately 1:52 p.m., MOORE was advised of her *Miranda* rights, and stated she did not want to speak with Border Patrol Agents without a lawyer present.

11.     BPA interviewed three of the vehicle's passengers, VELAZUEZ-BARRIOS, BURGOS PERALTA, and RAMOS GINES.  All three stated that they made arrangements

3

to be brought in and transported further into the United States.

12.    During BURGOS PERALTA's interview, he stated that he crossed into the United States near Naco, Sonora, Mexico with a group of five individuals and a foot guide. He stated that they navigated through the desert by waypoints on a cellphone. BURGOS PERALTA stated that they walked for about two hours to a designated location where there was a vehicle waiting for them.  Him and two other individuals entered the vehicle where there was a female driver who did not speak Spanish. BURGOS PERALTA stated that at some point the vehicle stopped at a house and left them in the vehicle for the whole night. In the morning a tall white male arrived and began to drive the vehicle, and the original female driver got into the front passenger seat. RAMOS GINES's was unable to pick out the driver and passenger in a photo lineup.

13.    During RAMOS GINES's interview, he stated that he crossed into the United States near Naco, Sonora, Mexico with a group of five individuals and a foot guide. RAMOS GINES stated that their foot guide took them to their pick-up spot, which took them about an hour after they crossed the border. They were picked up in a grey car and were later dropped off with someone with a minivan. They stayed the night in the minivan. In the morning the same grey car arrived to pick them up with a male driver and a female front seat passenger. RAMOS GINES's was unable to pick out the driver and passenger in a photo lineup.

14.    Based on my training and experience, and that of other agents, human smugglers commonly use cellphones to communicate between drivers and smuggling coordinators. This is current common trend to guide human smugglers to a specific location north of the International Boundary Fence separating Mexico and the United States, for UNC pickups in remote desert areas or roads with or without identifiable mile markers. Based on my training and experience, and that of other agents, after smugglers pickup UNCs at these locations, they transport them to another location, often directed on

4

cellphones, further within the United States, to assist their continued illegal presence in the United States.

15.    The SUBJECT CELLULAR TELEPHONE was seized incident to arrest of Ashley MOORE on September 18, 2024. The SUBJECT CELLULAR TELEPHONE was seized by United States Border Patrol (USBP) and has remained in the custody of the USBP since the date of its seizure.  THE SUBJECT CELLULAR TELEPHONE is currently stored in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona 85122.

16.    In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of USBP.

## III.    ITEMS TO BE SEIZED

17.    Based upon the facts contained in this Affidavit, I submit there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

18.    Based on my training, education, and experience in Alien Smuggling Operation (ASO) investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common amongst individuals involved in ASOs.  Individuals involved in alien smuggling activity tend to:

a.    Human smugglers commonly use cellular telephones to communicate with other human smugglers and undocumented noncitizens about smuggling-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, human smugglers commonly use other capabilities of cellular telephones to further their human

smuggling activities. Therefore, evidence related to human smuggling activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

b.      Human smugglers often have access to large amounts of United States currency in order to maintain and finance their ongoing smuggling activities. Therefore, records of the movement of smuggling proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT CELLULAR TELEPHONE.

c.      Moreover, human smugglers commonly take photographs of undocumented noncitizens that they share with other members of their organization for the purposes of identification. Therefore, photographs of undocumented noncitizens are likely to be found on the SUBJECT CELLULAR TELEPHONE.

19.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

## IV.    DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

20.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE.  Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

21.     *Probable cause.* I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

a.      I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.  The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The cellular

6

telephone is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

   b.    Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

   c.    Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

   d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in

7

a "swap" or "recovery" file.

22.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

   a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that

8

connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media

9

behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

23.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

24.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

10

## V.    CONCLUSION

25.    I submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens) and 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Conspiracy to Bring in, Transport and Harbor Illegal Aliens), are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

DANIEL C BRAG | Digitally signed by DANIEL C BRAG
Date: 2024.09.27 13:31:50 -07'00'

Daniel Brague
Border Patrol Agent
United States Border Patrol

Telephonically sworn to me this 27th of September, 2024.

HONORABLE ALISON S. BACHUS
United States Magistrate Judge

11